FILED

2011 Nov-21  AM 09:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **MISTY LEFTWICH,** | ) | |
| | ) | |
| **Claimant,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. CV-11-S-129-M** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner, Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Claimant Melissa Leftwich commenced this action on January 13, 2011,
pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of
the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ")
denying her claim for continuation of a period of disability and disability insurance
benefits.  On July 7, 2011, claimant filed a motion to remand the case to the
Commissioner pursuant to Sentence Six of 42 U.S.C. § 405(g), for consideration of
a subsequent favorable decision by the Commissioner.[1]  For the reasons stated herein,
the court finds that claimant's motion to remand pursuant to Sentence Six is due to
be denied, but that the case nonetheless is due to be remanded to the Commissioner
pursuant to Sentence Four of 42 U.S.C. § 405(g), for consideration of additional

---

[1] Doc. no. 8.

evidence presented for the first time to the Appeals Council.

## I. PROCEDURAL HISTORY

Claimant originally filed her application for disability benefits on July 1, 2002, and, on August 15, 2002, she was found to have been disabled as of November 27, 2001, due to Schizoaffective Disorder.[2]   On May 5, 2007, the Social Security Administration conducted a review of claimant's file pursuant to 20 C.F.R. § 404.1589,[3] and determined that claimant's disability had ceased on May 1, 2007.[4]

Claimant requested review of that decision, and she received a hearing before an administrative law judge ("ALJ") on March 12, 2009.[5]   At that hearing, claimant,

---

[2] Tr. 32, 47.

[3] That regulatory provision states, in relevant part:

> After we find that you are disabled, we must evaluate your impairment(s) from time to time to determine if you are still eligible for disability cash benefits. We call this evaluation a continuing disability review. We may begin a continuing disability review for any number of reasons including your failure to follow the provisions of the Social Security Act or these regulations. When we begin such a review, we will notify you that we are reviewing your eligibility for disability benefits, why we are reviewing your eligibility, that in medical reviews the medical improvement review standard will apply, that our review could result in the termination of your benefits, and that you have the right to submit medical and other evidence for our consideration during the continuing disability review. In doing a medical review, we will develop a complete medical history of at least the preceding 12 months in any case in which a determination is made that you are no longer under a disability. If this review shows that we should stop payment of your benefits, we will notify you in writing and give you an opportunity to appeal.

20 C.F.R. § 404.1589.

[4] Tr. 32, 51-52.

[5] Tr. 90-95.

2

who at the time was appearing *pro se*, acknowledged that her schizophrenia had improved, but nonetheless maintained that she was disabled due to bipolar disorder and fibromyalgia.  After those concessions and arguments had been made, however, the ALJ decided to reconvene the hearing on March 24, 2009, because claimant had laryngitis and could not speak loudly enough for her voice to be recorded by the hearing officer.[6]

Claimant also appeared *pro se* at the second hearing, during which she informed the ALJ that she had received a letter from the Social Security Administration on March 18, 2009, stating, "We recently reviewed the evidence in your Social Security disability claim and found that your disability is continuing."[7] Both claimant and the ALJ expressed confusion as to why the Social Security Administration would have made such a decision so soon after discontinuing claimant's benefits.  Even so, in light of the March 18, 2009 letter, the ALJ dismissed claimant's request for a hearing, but noted that claimant could reinstate that request if it later was determined that the March 18 letter had been mailed to claimant in error.[8]

The ALJ quickly reconsidered that decision, and sent claimant a letter on

---

[6] Tr. 1720-28.
[7] Tr. 109.
[8] Tr. 1731-35.

March 25, 2009, stating that he was vacating the dismissal of claimant's request for a hearing because he had determined that it was "highly likely that [the March 18 letter] was computer-generated, in error, without taking into account your pending request for review of the Administration's May 2007 determination that your disability has ceased."[9]

A third hearing was scheduled for June 18, 2009, and the ALJ heard testimony from both claimant and a vocational expert.  Claimant again appeared *pro se* at the June 18, 2009 hearing.[10]  On September 14, 2009, the ALJ issued a decision finding that claimant's disability had ceased as of May 1, 2007.[11]  The Appeals Council denied claimant's request for review on December 14, 2010, after acknowledging the receipt of several items of additional evidence that it had made part of the record.[12] As mentioned above, claimant filed this case on January 13, 2011.[13]  On April 5, 2011, the Social Security Administration issued a notice, in response to a subsequent application, that claimant was entitled to monthly disability benefits as of April 2010.[14]

---

[9] Tr. 113.

[10] Tr. 1736-56.

[11] Tr. 29-40.

[12] Tr. 10-14.

[13] Doc. no. 1 (Complaint).

[14] *See* doc. no. 8 (Motion to Remand), at Exhibit 1 (April 5, 2011 Notice of Award).

4

## II. DISCUSSION

**A.     Sentence Six Remand**

Plaintiff requests the court to remand this case, pursuant to Sentence Six of 42

U.S.C. § 405(g), for consideration of the Commissioner's April 5, 2011 decision that

claimant was entitled to benefits beginning April 2010.  Sentence Six states:

> The court may, on motion of the Commissioner of Social Security made
> for good cause shown before the Commissioner files the
> Commissioner's answer, remand the case to the Commissioner of Social
> Security for further action by the Commissioner of Social Security, and
> it may at any time order additional evidence to be taken before the
> Commissioner of Social Security, but only upon a showing that there is
> new evidence which is material and that there is good cause for the
> failure to incorporate such evidence into the record in a prior
> proceeding; and the Commissioner of Social Security shall, after the
> case is remanded, and after hearing such additional evidence if so
> ordered, modify or affirm the Commissioner's findings of fact or the
> Commissioner's decision, or both, and shall file with the court any such
> additional and modified findings of fact and decision, and, in any case
> in which the Commissioner has not made a decision fully favorable to
> the individual, a transcript of the additional record and testimony upon
> which the Commissioner's action in modifying or affirming was based.

42 U.S.C. § 405(g).   "Sentence six remands are 'available when evidence not

presented to the Commissioner at any stage of the administrative process requires

further review.'" *Poellnitz v. Astrue,* 349 Fed. Appx. 500, 504 (11th Cir. 2009)

(quoting *Ingram v. Commissioner of Social Security Administration,* 496 F.3d 1253,

1267 (11th Cir. 2007)).

5

> To be entitled to remand to the Commissioner, the claimant must show
> that (1) new, non-cumulative evidence exists; (2) the evidence is
> material such that a reasonable possibility exists that the new evidence
> would change the administrative result; and (3) good cause exists for the
> claimant's failure to submit the evidence at the appropriate
> administrative level. *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir.
> 1986). However, "not every discovery of new evidence, even if relevant
> and probative, will justify a remand to the Secretary, for some evidence
> is of limited value and insufficient to justify the administrative costs and
> delay of a new hearing." *Id.* at 876 (internal quotation marks omitted).
> Accordingly, sentence six encompasses only those instances in which
> "the district court learns of evidence not in existence or available to the
> claimant at the time of the administrative proceeding that might have
> changed the outcome of that proceeding." *Ingram*, 496 F.3d at 1267
> (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626, 110 S. Ct. 2658,
> 2664, 110 L. Ed.2d 563 (1990)).

*Carson v. Commissioner of Social Security,* 373 Fed. Appx. 986, 988 (11th Cir.

2010).

The April 5, 2011 Notice of Award is "new," in the sense that it did not exist

on September 14, 2009, the date of the ALJ's decision. For that same reason, it can

also be said that claimant had good cause for failing to present the Notice of Award

during the administrative proceedings on her prior claim. Those obvious

observations aside, the Eleventh Circuit has held that,

> [f]or evidence to be new and noncumulative, it must relate to the
> time period on or before the date of the ALJ's decision. *See* 20 C.F.R.
> 404.970(b). Evidence of deterioration of a previously-considered
> condition may subsequently entitle a claimant to benefit in a new
> application, but it is not probative of whether a person was disabled
> during the specific period under review. *See Wilson v. Apfel*, 179 F.3d

6

> 1276, 1279 (11th Cir. 1999) (*per curiam*) (holding that a doctor's opinion one year after the ALJ decision was not probative to any issue on appeal). By contrast, evidence of a condition that existed prior to the ALJ hearing, but was not discovered until after the ALJ hearing, is new and noncumulative. *See Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214, 1218-19 (11th Cir. 2001) (holding that remand was warranted because a doctor discovered a herniated disk after the ALJ decision).

*Leiter v. Commissioner of Social Security Administration,* 377 Fed. Appx. 944, 950 (11th Cir. 2010). The foregoing quotation from the unpublished opinion in *Leiter* is, in effect, just another way of saying that the new evidence must be "material," meaning that it would be likely to change the administrative result. Here, the April 5, 2011 Notice of Award does not relate to the time period before the ALJ's September 14, 2009 decision, and it has little to no likelihood of changing the administrative result on claimant's first claim. The Notice of Award stated that claimant was entitled to benefits as of April 2010, but the ALJ's decision addressed claimant's disability status as of May 1, 2007. The Notice of Award did not state the Commissioner's reasons for deciding to award benefits as of April 2010, and claimant did not offer any additional evidence to shed light on the basis for that decision.[15] There is no reason to believe that the mere fact that claimant received benefits as of

---

[15] The Commissioner suggests that the reason for the favorable decision could be a deterioration of claimant's condition after the ALJ's decision. Indeed, claimant alleged in her complaint that she suffered a heart attack on October 23, 2010, and had to undergo emergency bypass surgery on October 26, 2010. Due to complications of the surgery, claimant now suffers from renal failure and requires dialysis. Complaint, at ¶ 11.

April 2010 would cause the Commissioner to conclude that she also was entitled to benefits on May 1, 2007.  Thus, the Notice of Award is not "non-cumulative" or "material," as required for a Sentence Six remand.  *See, e.g., Cassidy v. Commissioner of Social Security Administration,* 383 Fed. Appx. 840, 842 (11th Cir. 2010) (holding that a subsequent award of benefits was "not inconsistent" with the previous finding of no disability because "significant additional medical evidence was presented in support of the" later claim, and "that the evidence was relevant to the time *after*" the initial decision) (emphasis supplied); *Allen v. Commissioner of Social Security,* 561 F.3d 646, 653 (11th Cir. 2009) ("[A] subsequent favorable decision itself, as opposed to the evidence supporting the subsequent decision, does not constitute new and material evidence under § 405(g)."); *Wilson v. Apfel,* 179 F.3d 1276, 1279 (11th Cir. 1999) (holding that, while a medical opinion rendered one year after the ALJ's decision "may be relevant to whether a deterioration in [the claimant's] condition subsequently entitled her to benefits, it is simply not probative of any issue in this case").

Claimant also argues that the Commissioner's Hearings, Appeals, and Litigation Law Manual ("HALLEX") requires the Commissioner to consider the April 5, 2011 Notice of Award in connection with her claim for disability benefits as of May 1, 2007, and that this court must remand for the Commissioner to undertake

that consideration at the administrative level.  The section of HALLEX upon which

claimant relies states, in pertinent part, that:

> A claimant may file a new (subsequent) application while seeking review in court of the Commissioner's final decision on a prior claim. The period at issue in such a subsequent claim is limited to the period beginning with the day after the date of the Commissioner's final decision on the prior claim.  Because the claimant has received a final decision on the first claim, the subsequent claim may proceed through the administrative process.  However, *if the subsequent claim is allowed while the prior claim is pending in court* or the court remands the prior claim, *the Appeals Council (AC) must determine the effect, if any, of such action on the other claim*.

HALLEX § I-4-2-101.I(A) (emphasis supplied).   The Appeals Council must

determine whether "the evidence in SSA's possession is consistent with both the ALJ

denial in the prior claim and the subsequent allowance.  If the evidence is consistent

with the different outcomes, the ALJ denial and the subsequent allowance can co-

exist."  HALLEX § I-4-2-101.II(A)(1).

Claimant cites no authority to persuade the court that HALLEX is binding on

this court, or that its requirements supersede case law from the Eleventh Circuit and

other Circuit Courts of Appeal holding that a subsequent favorable decision is not

grounds for remanding a prior denial of benefits, unless there is independent

evidence, relating to the time period of the prior denial, that the denial decision was

in error. *See Tarver v. Astrue,* No. CA 10-0247-C, 2011 WL 206217, at *3 (S.D. Ala.

Jan. 21, 2011) ("There is uncertainty — based on a split among the Courts of Appeals, as well as between the District Courts in the Eleventh Circuit — as to whether or not that [sic] HALLEX creates judicially-enforceable rights.").  In fact, the Eleventh Circuit has strongly indicated that it would not afford HALLEX the force of law.  *See George v. Astrue,* 338 Fed. Appx. 803, 805 (11th Cir. 2009) (characterizing an assumption that HALLEX has the force of law "a very big assumption").  It is true, as claimant points out, that administrative agencies should be required to follow their internal rules, and that courts can choose to intervene if an agency's failure to follow its internal rules results in prejudice to a claimant.  *See Newton v. Apfel,* 209 F.3d 448, 459 (5th Cir. 2000) ("While HALLEX does not carry the authority of law, this court has held that 'where the rights of individuals are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise would be required.'  *See Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981). If prejudice results from a violation, the result cannot stand. *Id*.").  Here, however, there is no indication that claimant could have been prejudiced by any technical violation that might have occurred.  Due to the substantial temporal gap between the date plaintiff's benefits ceased (May 1, 2007) and the date they recommenced (April 2010), it is highly unlikely that the Appeals Council would have determined, upon review, that the April 5, 2011 Notice

of Award was inconsistent with the prior decision that claimant's disability ceased on May 1, 2007. Therefore, even assuming HALLEX affects this court's analysis, and assuming the Commissioner violated HALLEX in considering claimant's two separate claims for benefits, there are no grounds to support a Sentence Six Remand. The motion to remand is due to be denied.

## B.    Review of the ALJ's Decision

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

Because this case involves a termination of benefits, it must be considered pursuant to 42 U.S.C. § 423(f), which provides that

> [a] recipient of benefits under this subchapter or subchapter XVIII of this chapter based on the disability of any individual may be determined not to be entitled to such benefits on the basis of a finding that the physical or mental impairment on the basis of which such benefits are provided has ceased, does not exist, or is not disabling only if such finding is supported by–
>
> (1) substantial evidence which demonstrates that –

11

(A) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and

(B) the individual is now able to engage in substantial gainful activity.

42 U.S.C. § 423(f)(1).  Federal regulations define the term "medical improvement" as

any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled.  A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s) . . . .

20 C.F.R. § 404.1594(b)(1).  Medical improvement is sufficient to support a termination of benefits only if the medical improvement results in an increase in the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1594(b)(3).

The regulations also prescribe an eight-step evaluation process for determining whether disability benefits should be terminated due to medical improvement.  Those steps are:

(1) Are you engaging in substantial gainful activity?  If you are (and any applicable trial work period has been completed), we will find disability to have ended (see paragraph (d)(5) of this section).

(2) If you are not, do you have an impairment or combination of impairments which meets or equals the severity of an impairment listed

12

in appendix 1 of this subpart?  If you do, your disability will be found to continue.

(3) If you do not, has there been medical improvement as defined in paragraph (b)(1) of this section?  If there has been medical improvement as shown by a decrease in medical severity, see step (4).  If there has been no decrease in medical severity, there has been no medical improvement. (See step (5).).

(4) If there has been medical improvement, we must determine whether it is related to your ability to do work in accordance with paragraphs (b)(1) through (4) of this section; *i.e.*, whether or not there has been an increase in the residual functional capacity based on the impairment(s) that was present at the time of the most recent favorable medical determination.  If medical improvement is not related to your ability to do work, see step (5).  If medical improvement is related to your ability to do work, see step (6).

(5) If we found at step (3) that there has been no medical improvement or if we found at step (4) that the medical improvement is not related to your ability to work, we consider whether any of the exceptions in paragraphs (d) and (e) of this section apply.  If none of them apply, your disability will be found to continue.  If one of the first group of exceptions to medical improvement applies, see step (6).  If an exception from the second group of exceptions to medical improvement applies, your disability will be found to have ended.  The second group of exceptions to medical improvement may be considered at any point in this process.

(6) If medical improvement is shown to be related to your ability to do work or if one of the first group of exceptions to medical improvement applies, we will determine whether all your current impairments in combination are severe (see § 404.1521).   This determination will consider all your current impairments and the impact of the combination of those impairments on your ability to function.  If the residual functional capacity assessment in step (4) above shows significant limitation of your ability to do basic work activities, see step

13

(7).  When the evidence shows that all your current impairments in combination do not significantly limit your physical or mental abilities to do basic work activities, these impairments will not be considered severe in nature.  If so, you will no longer be considered to be disabled.

(7) If your impairment(s) is severe, we will assess your current ability to do substantial gainful activity in accordance with § 404.1560. That is, we will assess your residual functional capacity based on all your current impairments and consider whether you can still do work you have done in the past.  If you can do such work, disability will be found to have ended.

(8) If you are not able to do work you have done in the past, we will consider one final step.  Given the residual functional capacity assessment and considering your age, education and past work experience, can you do other work?  If you can, disability will be found to have ended.  If you cannot, disability will be found to continue.

20 C.F.R. § 404.1594(f).

The ALJ made the following findings in his September 14, 2009 administrative

decision:

Step 1 Finding:  Claimant has not engaged in SGA after May 1, 2007, the date disability was determined to have ceased.  § 1594(f)(1).

Step 2 Finding:  Claimant does not contend that she has an impairment that, singly or in combination with any other impairment, meets or medically equals a listing in the Listing of Impairments, and I find that she does not.  § 1594(f)(2).

Step 3 Findings:  The most recent favorable decision finding that Claimant was disabled is the State agency determination dated August 15, 2002, known as the "comparison point decision" or "CPD."  At the time of the CPD, Claimant had the following severe medically determinable impairment: Schizoaffective Disorder, known as the "CPD

impairment." Since the CPD, Claimant has undergone medical improvement.

. . . .

Step 4 Finding: Claimant's medical improvement is related to her ability to work. § 1594(f)(4).

. . . .

Step 5 Finding: Not applicable. § 1594(f)(5).

Step 6 Finding: Claimant *currently* has the following combination of impairments that is severe: depression, anxiety, a personality disorder, and fibromyalgia. § 1594(f)(6).

. . . .

Step 7 Findings: Based upon *current* impairments, Claimant's physical RFC consists of the ability to do sedentary work. Her mental RFC consists of the ability to understand, remember, and carry out simple instructions; to respond appropriately to supervisors and co-workers, but not to the public; and to respond appropriately to normal work pressures. Claimant is able to do past relevant work as Monitor Technician and Receptionist. § 1594(f)(7).

. . . .

Step 8 Findings: Born on January 25, 1974, Claimant was 33 years old — defined as a "younger person, age 18-44" — when, according to the State agency, disability ceased on May 1, 2007. § 1563. She has a high school education and above and is able to communicate in English. § 1564. As of May 1, 2007, she was able to adjust to other jobs existing in significant numbers in the national economy. §§ 1594(f)(8), 1560(c), 1566.

. . . .

15

Conclusion:  Claimant's disability ceased as of May 1, 2007.  § 1594(f)(8).[16]

Claimant argues that the Commissioner's findings are neither supported by substantial evidence nor in accordance with applicable law.  Specifically, claimant asserts that: (1) she meets Listing 12.04, for affective disorders; (2) the Appeals Council should have remanded her claim for consideration of additional evidence; (3) the ALJ's finding of medical improvement was not supported by substantial evidence; (4) the ALJ failed to properly develop the record; (5) the ALJ's decision (particularly the hypothetical question posed to the vocational expert) was not based on substantial evidence; and (6) the ALJ failed to state adequate reasons for not fully crediting claimant's hearing testimony.

There is no reasonable dispute that claimant has experienced medical improvement since she first was awarded disability benefits on August 15, 2002.  The prior finding of disability was based upon claimant's Schizoaffective disorder, but she acknowledged during the administrative hearing that that condition had improved.[17] Even if, as claimant asserts, she was not competent to make that concession due to her mental problems (a circumstance this court finds to be highly unlikely),[18] there is no

---

[16] Tr. 36-40 (footnotes omitted, boldface emphasis removed, italicized emphasis in original).

[17] Tr. 1722.

[18] *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(D)(1)(b) ("Individuals with mental impairments can often provide accurate descriptions of their limitations.  The presence of a mental impairment does not automatically rule you out as a reliable source of information about your own

medical evidence that claimant continued to experience any schizophrenic symptoms after May 1, 2007.

Therefore, the real question is whether claimant was otherwise unable to work as of May 1, 2007. *See* 42 U.S.C. § 423(f)(1)(B) (stating that the decision to terminate benefits must be supported by substantial evidence that "the individual is now able to engage in substantial gainful activity"). One issue that appears central to all of claimant's arguments in that regard is whether additional evidence that was submitted to the Appeals Council by claimant's newly retained counsel *after* the ALJ's decision, but which pertained to the time period of the ALJ's decision, should have changed the administrative result.[19]  Claimant's attorney submitted more than 700 pages of additional medical evidence that claimant did not provide to the ALJ when she was proceeding *pro se*, including: (1) Gadsden Regional Medical Center records from October 23, 2010 to November 3, 2010; (2) records from Dr. Benjamin M. Carr from August 11, 2009 to January 25, 2010, and a medical source statement dated November 4, 2009; (3) Riverview Regional Medical Center records from

---

functional limitations.").

[19] This assertion is most apparent in conjunction with claimant's argument that the Appeals Council should have remanded to the ALJ for consideration of additional evidence, but it is also relevant to claimant's other arguments, because, for example, claimant argues that the additional evidence should be considered in determining whether she meets a listing, and that the ALJ failed to properly develop the administrative record because he did not obtain the additional evidence before issuing his decision.

August 18, 2009 to September 3, 2009; (4) medical records and a medical source statement from Dr. Daniel S. Prince dated February 1-10, 2010; (5) a report from Dr. David R. Wilson, dated November 3, 2009; (6) Marshall Medical Center South records from August 24, 2007 to March 15, 2009; (7) Gadsden Regional Medical Center records from January 28, 2003 to December 3, 2003; (8) Dr. 10's Chiropractic Center records from June 2, 2005 to August 8, 2006; (9) CED Mental Health Records from November 8, 2007 to May 7, 2008; (10) Riverview Regional Medical Center records from March 29, 2003 to May 25, 2009; and (11) Pain South records from March 20, 2006 to April 9, 2008.[20]

Because that evidence was submitted for the first time to the Appeals Council, the court must consider whether remand is warranted under "sentence four" of 42 U.S.C. § 405(g),[21] not "sentence six" of that statute.  As the Eleventh Circuit has observed:

> "Section 405(g) [of the Social Security Act] permits a district court to remand an application for benefits to the Commissioner . . . by two methods, which are commonly denominated 'sentence four remands' and 'sentence six remands.'" *Ingram* [*v. Commissioner of Social Security Admnistration*]*,* 496 F.3d [1253,] 1261 [(11th Cir. 2007)].  A sentence four remand, as opposed to a sentence six remand,

---

[20] *See* Tr. 1020-1717.

[21] Sentence Four states that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

18

> is appropriate when "evidence properly presented to the Appeals
> Council has been considered by the Commissioner and is part of the
> administrative record." *Ingram,* 496 F.3d at 1269.  Under a sentence
> four remand, when a claimant has submitted evidence for the first time
> to the AC, the claimant is not required to show good cause.  *See*
> *Melkonyan v. Sullivan,* 501 U.S. 89, 99-100, 111 S. Ct. 2157, 2164, 115
> L. Ed. 2d 78 (1991) (recognizing "Congress' explicit delineation in §
> 405(g)" between sentence four and sentence six remands and noting that
> a court may remand under sentence six "only if the claimant shows good
> cause for failing to present the evidence earlier"); *see also Ingram,* 496
> F.3d at 1258 (recognizing that we have previously "mistakenly stated
> that evidence first presented to the Appeals Council could be considered
> by the court only if the applicant had good cause for not presenting it
> earlier to the administrative law judge.").

*Smith v. Astrue,* 272 Fed. Appx. 789, 802 (11th Cir. 2008) (first bracketed alteration

and ellipses in original, second bracketed alteration added).

> When a claimant submits new evidence to the AC, the district court must
> consider the entire record, including the evidence submitted to the AC,
> to determine whether the denial of benefits was erroneous.  *Ingram,* 496
> F.3d at 1262.  Remand is appropriate when a district court fails to
> consider the record as a whole, including evidence submitted for the first
> time to the AC, in determining whether the Commissioner's final
> decision is supported by substantial evidence.  *Id.* at 1266-67.  The new
> evidence must relate back to the time period on or before the date of the
> ALJ's decision.  20 C.F.R. § 404.970(b).

*Smith,* 272 Fed. Appx. at 802.

The ALJ's administrative decision was issued on September 14, 2009.

Therefore, most of the additional records originated *before* the date of the ALJ's

decision, and even the ones that originated *after* that date are close enough to "relate

19

to" the date of the decision.  Therefore, the court must look at *all* of the evidence in the record, including the medical records submitted for the first time to the Appeals Council, in determining whether the case should be remanded to the Commissioner, and whether the ALJ's decision was supported by substantial evidence.

Claimant's treating physicians repeatedly noted that she suffered from severe depression, sometimes also referring to her condition as bipolar disorder.[22]  Dr. Benjamin Carr completed a disability questionnaire on November 4, 2009, stating that claimant had been unable to work since 2002, and would continue to be unable to work for at least 18 to 24 more months.[23]  Records from CED Mental Health indicate that claimant continued to suffer from severe depression and suicidal ideation approximately one week after a suicide attempt in October of 2007,[24] and she was referred for participation in an intensive day treatment program in December 2007. Even so, claimant refused further treatment in the intensive program, and she informed CED that she intended to return to work.[25]  She was discharged from CED on May 7, 2008, on which date her GAF score was 90, indicating absent or minimal

---

[22] *See* Tr. 1093-1103 (records from Dr. Carr from August 11, 2009 to January 25, 2010).

[23] Tr. 1102-03.

[24] The ALJ was aware of the suicide attempt and even mentioned it in his administrative decision.  Tr. 35.

[25] Tr. 1315-33.

symptoms.[26]  Dr. David Wilson, a clinical psychologist at Gadsden Psychological

Services, conducted a psychological evaluation on November 3, 2009.  Claimant

reported being depressed most of the time, low energy, frequent crying spells,

disturbed sleep, and thoughts of suicide but no active plan to harm herself.[27]  Dr.

Wilson stated claimant's profile

> indicates that she is experiencing a high level of depression.  Her
> depression is clinically significant.  She is also highly anxious, to the
> point that this is likely to interfere with her ability to function on a day-
> to-day basis.  She also has serious somatic complaints and concerns.
> She said that her life is spent in pain, and she wakes with pain and
> feeling tired most mornings.  Much of the time she feels useless to
> herself and others.  She has a hard time completing tasks because she
> keeps getting sidetracked.  In a group of people she often feels she does
> not really belong.  She has a lot of trouble making decisions.  She
> frequently says thing[s] in anger that she later regrets.  She feels that her
> life is filled with problems, and she sometimes feels that she is about to
> lose her mind.  She sometimes thinks that everybody would be better all
> [sic] if she were dead.[28]

Dr. Wilson further stated:

> Misty is someone who certainly wants to work in the future, but
> she believes she's not able to at this time.  She made it clear that she
> would certainly prefer to work if she could.  There is no indication
> during this evaluation that she was exaggerating her problems in order
> to get on disability.  She was open and honest about problems that she
> does have, and at the present time, her mood disturbance and related
> anxiety do appear to be so severe that it would be difficult for her to

---

[26] Tr. 1333.

[27] Tr. 1129-33.

[28] Tr. 1133-34.

> work at this time.  She continues to struggle with depression and mood
> swings.  She also has some medical problems, including fibromyalgia,
> and this could also make it a challenge to work.  She said she had
> difficulty with some of the physical requirements of her last job.  At the
> present time her problems do appear to be so severe that she is not
> capable of working.  If she is able to continue in treatment, and she
> shows a lot of improvement, she may be able to work in the future.[29]

He assessed claimant with bipolar disorder, most recent episode depressed, fibromyalgia, occupational limitations, inadequate access to necessary medical or psychiatric care, and a GAF of 50, indicating serious symptoms.[30]  Even though Dr. Wilson's evaluation was conducted several weeks after the ALJ's decision, it is clear that his assessments relate to the time period of the administrative decision, as Dr. Wilson painted a longitudinal picture of claimant's mental impairments and their effect on her ability to work.

Dr. Daniel Prince, a rheumatologist, conducted an evaluation of claimant's physical impairments on February 1, 2010.  Claimant reported pain at a level of 7 out of 10, and she identified tenderness at all trigger points along the spine.  Dr. Prince assessed claimant with fibromyalgia, bipolar disorder, and a history of cancer.  He stated:

> This is an unusual situation.  It has been interesting that she was
> able to get past the problem of Hodgkin [sic] disease and was enrolled

---

[29] Tr. 1134.

[30] *Id.*

22

in nursing school, become a nurse, then injured her back, and since that time has developed full-blown fibromyalgia problems. The bipolar part of the problem seems to be a little bit better managed by the patient as she is a registered nurse, but she still has trouble finding medicines that will control her symptoms and help her mood disorder along with the fact that she has to take medications which do cause some impairment of her concentration ability which would definitely be a factor in her work. She does not appear to be able to lift any heavy objects and by her training, she would be unable to do sit down desk job as a registered nurse. She would be called upon to do manual activities with patients, which will put her back at risk of more injuries. Also, the fact that she did have Hodgkin [sic] disease about 15 years ago, puts her at risk for yet another type of malignancy process in the future. This risk may not be great, but it is an increased risk compared to the people not having had history of Hodgkin [sic] disease.[31]

Dr. Prince stated claimant "is completely, totally disabled from classic fibromyalgia with chronic fatigue syndrome."[32]   He completed a physical capacities form, indicating that claimant could sit for one hour at a time, stand for 1/4 hour at a time, and walk for 1/2 hour at a time. She could sit for a total of three hours, stand for a total of one hour, and walk for a total of one hour in an eight-hour work day. She could occasionally lift up to twenty pounds, carry up to ten pounds, use both hands to push and pull, use the left leg and foot to push and pull, bend, climb, reach, and use her hands for simple grasping, fine manipulation, and fingering or handling, but she could never squat, crawl, or use her right leg or foot (or both legs together) for

---

[31] Tr. 1125.

[32] *Id.*

pushing and pulling.  She had total restriction of her ability to work with unprotected heights and moving machinery, moderate restriction of her ability to drive automotive equipment, and mild restriction of her ability to adapt to marked changes in temperature and humidity, as well as her ability to tolerate dust, fumes, and gases. Dr. Prince indicated that claimant's impairments would last for at least twelve months.[33]  As with Dr. Wilson, there are indications that Dr. Prince's opinion relates to the time period before the ALJ's decision, including Dr. Prince's discussion of claimant's history of fibromyalgia and his review of her past medical records.

On October 14, 2007, claimant reported to Marshall Medical Center South with complaints of level 7 pain in her right hip and lower back for several weeks, but x-rays of her lumbar spine were unremarkable.[34]  She returned on January 11, 2008, with complaints of level 8 pain "all over," including in her hip, back, and joints.  She had muscle spasms and decreased range of motion in her lower back.  She was assessed withe acute myofascial strain and an acute herniated disk at L4-L5.[35]  On April 6, 2008, she returned, reporting joint pain at level 3.[36]  On November 10, 2008, she reported headache pain at level 10, and was assessed with acute headache and

---

[33] Tr. 1126-28.

[34] Tr. 1160-65.

[35] Tr. 1178-79.

[36] Tr. 1196.

acute sinusitus.[37]  On February 7, 2009, she reported right flank pain at level 8.[38]

Claimant received treatment at Dr. 10's Chiropractic Center from June 2, 2005 to August 8, 2006.  On five visits between June 2 and November 2, 2005, she reported neck pain at a level 5-6 and headache at a level 8.  Her neck pain radiated to her shoulders and arms and was aggravated by excessive activity or stress. Medication had not relieved any of her symptoms.  On August 8, 2006, she had neck pain at level 4 that increased to level 6 with movement.  She also had level 2-3 pain in her lower back that radiated to her hip.  X-ray results revealed no changes from November 2, 2005.[39]

From August 14, 2003 to August 4, 2007, claimant presented to Riverview Regional Medical Center eleven times with complaints of shoulder, back, flank, and neck pain, as well as severe headaches.  She was generally treated with pain medication.[40]

Claimant presented to Pain South on January 25, 2008 with complaints of widespread joint pain, painful skin, lower back pain, and right hip and leg pain.  Her joint pain started with chemotherapy treatment for Hodgkin's disease in 2000 and

---

[37] Tr. 1239.

[38] Tr. 1247-50.

[39] Tr. 1310-14.

[40] *See generally* Tr. 1334-1688.

progressively worsened.[41]   On February 1, 2008, she returned to Pain South with complaints of low back and right leg pain.  She was assessed with degenerative disc disease and lumber radiculitis.[42]   She returned again on February 14, 2008, complaining of chronic low back pain with pain and numbness in the right leg.  The assessment was right L4 and L5 radiculopathy.  Claimant apparently brought records of prior testing with her to her February 14 appointment.  An MRI from March 20, 2006 showed mild disc degeneration at L5-S1 with mild posterior disc bulge but no spinal stenosis or foraminal narrowing.  Another MRI from October 4, 2007 showed mild spondylosis and chronic L5-S1 degnerative disc disease with a posterior bulge, but no acute findings.[43]   On February 1, 15 and 29, 2008, she received epidural steroid injunctions in her lumbar spine.[44]   On April 9, 2008, claimant returned with sharp, shooting, and throbbing pain in her low back that radiated to her right leg and hip.  The pain was at level 8 on the date of her visit and had averaged a level 6 over the last month.  The pain had worsened since her last visit.  She was assessed with lumbar degenerative disc disease and lumbar radiculitis, and was referred for medication monitoring.[45]

---

[41] Tr. 1700

[42] Tr. 1689.

[43] Tr. 1690-95.

[44] Tr. 1709-14.

[45] Tr. 1715-17.

The Appeals Council presumably considered all of this additional evidence of claimant's mental and physical impairments, but it did not provide any discussion of the weight it afforded any of the evidence, and it did not articulate any explanations for rejecting the opinions of treating and examining sources that claimant experienced disabling mental and physical impairments. Absent any such discussion, it is difficult to discern whether the decision of the Commissioner was supported by substantial evidence. Due to the sheer volume of the additional evidence presented, and the tendency of much of that evidence to demonstrate severe impairments, this court concludes that a more thorough review of the additional evidence is warranted.[46] That review, including an examination of all the medical evidence of record, the gathering of even more evidence if necessary, evaluation of the weight to be afforded different medical sources, and conclusions about the effect of the additional evidence on claimant's ability to perform work-related activities, should be conducted in the first instance by the Commissioner.

### III. CONCLUSION AND ORDERS

In accordance with the foregoing, claimant's motion for remand pursuant to Sentence Six of 42 U.S.C. § 405(g) is DENIED. Even so, the decision of the

---

[46] The court acknowledges that some of the additional evidence dates after the ALJ's decision, but, as discussed *supra,* there are indications that that evidence relates to the time period before the decision.

Commissioner is reversed, and this action is REMANDED to the Commissioner of the Social Security Administration pursuant to Sentence Four of 42 U.S.C. § 405(g), for further proceedings consistent with this memorandum opinion and order.  Upon remand, the Commissioner should give further consideration to the additional evidence submitted for the first time to the Appeals Council, and assign an ALJ to make detailed determinations about the effect of that evidence on claimant's ability to perform work-related activities on and after May 1, 2007.

DONE this 21st day of November, 2011.

_____

United States District Judge

28